CHARLES STRICKLAND *v.* STATE OF MISSISSIPPI.

1. CRIMINAL LAW. *Murder. Manslaughter. Code* 1892, § 1149. *Instructions.*

Where on the trial of an indictment for murder it appeared that several persons who were unknown to defendant, without warrant for his arrest, and when he had committed no offense, came to his home at night, some of them armed, declaring that they had come to arrest him, and demanding that he throw up his hands, and he at once shot at them, killing one of the number, for which the indictment was found, it is decided:

(a) That an instruction in the language of the statute (code 1892, § 1149) defining murder, among other definitions, as "the killing of a human being, without authority of law, when done in the commission of an act eminently dangerous to others, and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual," is not applicable to the case;

(b) That defendant was entitled to have the jury instructed touching the law of manslaughter; and,

(c) That an instruction for the state, assuming the parties fired upon to have been officers, was erroneous.

FROM the circuit court of Marshall county.

HON. PERRIN H. LOWREY, Judge.

Strickland, the appellant, was indicted, tried, and convicted in the court below for the murder of one Cal Thompson; sentenced to death and appealed to the supreme court. The facts are sufficiently stated in the opinion of the court.

*L. A. Smith,* attorney, for appellant.

Defendant was in his own home and was unlawfully assaulted therein. Section 23 of the state constitution provides that the "people shall be secure in their homes and possessions from unreasonable seizure and search; and no warrant shall be

issued without probable cause, supported by oath or affirmation, specially designating the place to be searched and the person or thing to be seized." There was not a scintilla of evidence before the jury that the persons who, in the dead of night, demanded an entrance to the appellant's home had a warrant for his arrest or for the search of the premises where he lived. Aside from the violation of the section of the constitution referred to there are lacking some of the primary elements of arrest. If all the evidence offered by the state in this case were granted to be true, it could not support a verdict of murder. The evidence is undisputed that defendant did not know these men personally nor that they were officers of the law.

The court erred in granting the charges given the state. They are entirely unwarranted by the evidence. In *Hawthorne* v. *State,* 58 Miss., 778, this court says that all instructions are to be construed together, and where the court commits an error prejudicial to the accused a conviction will be set aside.

How can the charge interpreting the action of this defendant as deliberate design to affect the death of the deceased be consistent with the charge interpreting his action as a reckless commission of an act eminently dangerous to other, and evincing a depraved heart, regardless of human life, although without any premeditated design to affect the death of any particular person?

*Monroe McClurg,* attorney-general, for appellee.

[The brief of the attorney-general is lost from the files, hence the reporter is unable to give the points made.]

TERRAL, J., delivered the opinion of the court.

The appellant being convicted of murder, and being sentenced to be hanged, assigns error in the proceedings against him.

Four persons came to his home somewhat late at night, two of them armed, declaring they came to arrest him, and upon

seeing him, demanded that he throw up his hands, when he fired upon them, and one of them was killed. His counsel claim that if he fired upon his assailants because of being unlawfully restrained of his liberty he is only guilty of manslaughter, and that at least his contention in this respect should have been placed before the jury. This contention is, we think, well grounded. . Whenever the life of a human being is in the balance, it is but just to him that the law governing the case made against him be properly stated to the jury.

The appellant here is not shown to have committed any wrong; his assailants show no warrant against him; yet he is assaulted in his own home at night by unknown persons, some of whom are visibly armed, and one of them is killed in consequence. Without more, such evidence only presents a case of manslaughter. The fourth instruction for the state is assailed as erroneous. It declares: "It is murder to kill a human being without authority of law when done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular person." Law writers justify this character of instruction where a person wantonly rides a horse used to kick into a crowd and one is thereby killed; or to random shooting into a crowd without a particular purpose to kill; the malice arising out of the wantonness of the dangerous act done without provocation; but it is not strictly applicable in a case like this, where the accused is suddenly accosted by a crowd of armed men demanding him to surrender, under circumstances where the propriety of their conduct is gravely questionable.

The fifth instruction for the state assumed, as we understand it, that the persons armed who accosted Strickland and demanded that he throw up his hands and submit to arrest were officers in the due execution of their office. We think it was for the jury to say, upon the evidence, whether they were officers and whether they were proceeding with discretion and

propriety. In a matter of such grave consequence to appellant it was of vital moment to him that the jury should be correctly informed of his rights in the premises.

Because of the error of instructions (4 and 5, for the state) in the case as made before the jury, we think the appellant should have a new trial.

*Reversed and remanded.*

